It is undisputed that Mr. Lachino was apparently eligible for pre-conclusion voluntary departure at his 2010 removal hearing. The immigration judge, however, failed to advise him of his eligibility. This is a peer-review process violation under the United States Constitution. An Ortiz-Lopez requires reversal. I'll start by discussing the due process violation and then I'll turn to the shared questions. First, the due process violation. As an Ortiz-Lopez, Mr. Lachino's due process rights were violated because the immigration judge failed to inform him that he was eligible for pre-conclusion voluntary departure. Ortiz-Lopez instructs that, quote, the requirements of the I.J. to inform an alien in his or her ability to inform the denial of due process will invalidate the underlying report he is seeking. End quote. The inability of the I.J. to inform is triggered whenever the records imply the factual basis for the report. Now here, it's undisputed that the records before the immigration judge implied that there was a factual basis for voluntary departure. The U.S. government has, though, numerous places throughout its briefs. On page 11 of his brief, for example, it states that the I.J. necessarily believes that Lachino is eligible to fast-track voluntary departure. That's so because the immigration judge knew that Mr. Lachino did not fall into either of the two classes of aliens that are statutorily ineligible for voluntary departure. That is, he was neither an aggravated felon nor an alien in terrorism-related conditions. After a little hearing, the immigration judge specifically incorporated each of the records in the I.Q. 13 as the second exhibit. And the I.Q. 13 indicates the two places that Mr. Lachino was housed at the Stark Correctional Facility, which is a facility specifically for juvenile offenders. From this information, the immigration judge knew that Mr. Lachino was a juvenile offender, and that his criminal history consisted entirely of juvenile invasions. And the immigration judge reported that these juvenile invasions were not to serve anything as far as statutory eligibility under the Voluntary Departure Act. Because it was apparent from the record that Mr. Lachino was eligible for voluntary departure, it was mandatory to meet the informed criteria. The immigration judge, however, failed to so inform Mr. Lachino. He never once stated that he was eligible for voluntary departure, that voluntary departure was a form of relief that would allow him to leave the country and move on, or that to merit voluntary departure, he would have to present certain positive evidence. And the government doesn't dispute this point. Instead, the government's primary contention is that the immigration judge denied voluntary departure. Well, is that, isn't there some duty, let's assume that he should have been told that he was eligible, and that the IJA, for whatever reason, thinking that he, forgetting that he was a juvenile, for whatever reason, didn't tell him that he was eligible for voluntary departure. He's challenging his removal now in district court. Doesn't he have some burden to show that this was prejudiced to him in some way, and that he was denied some really substantive right, not merely that the right words weren't mouthed? That is correct. There is a burden to show prejudice as part of the fundamentally unfair showing under 1346D. But as far as the question of prejudice, the proper course of action in this court would be to remand him to district court to determine whether Mr. Lachino was in fact entitled to voluntary departure. Well, didn't he have some burden to show, at least prima facie, that he was prejudiced when he challenged the removal in the first place? Because the removal itself, the documentation and everything was there. Right. He does have a burden to demonstrate prejudice. I would say in this case that burden was never met. This court has made it clear that in the case of the Congress in 2013, the prejudice inquiry is whether there was a plausible form of remand. And the rough explication of plausibility comes from Alcazar Justus, who was an unpublished petition from this court last year. He states first what plausibility is not. Plausibility is not a showing that voluntary departure guarantees a certain parole threshold. And there's really a problem in this case, right? How do you find the required support? What do you think Mr. Lachino should say? As well as a new survey, or a voluntary departure survey. Excuse me. Do you think there are facts in those cases to the equity that the individual reports were content? The government suggests here that Mr. Lachino would have to show unusual and extraordinary equities under that plausibility analysis. What's your position on that? Well, first, I believe that petition is incorrect. Second, I believe, yes, that petition was correct, but Mr. Lachino couldn't be able to provide a survey of those. Yet, he found outstanding equities on similar facts. Well, what did he say to the district court? I guess that's what you want us to remand for the district court to have a further hearing on this. But didn't he have to show something to the district court in the first place? What did he show? That's what I'm asking. to marry her and have children. Was there any thought for months after? Was there any thought for months after the analysis? Was there any thought for months after the analysis? To be honest with you, I don't know. I think those would be the facts that if this court were to reach the prejudice issue, it would go in to the prejudice analysis. Ultimately, as I suggested in my report, the district court never reached the prejudice issue because it found there was no declassified issue. It was a similar posture we're in here. So, I would submit that the proper court's actions for this court would be to remand for the district court to have a further discussion. There are some countervailing factors, though, with respect to gang activities and some criminal history and the like. So, don't we have to take into account whether or not with that background the plausibility determination could be made with that collection of factors? I mean, is that something we can consider in terms of determining whether or not it's appropriate to remand? What is appropriate to consider is that the plausibility determination involves a weighing of the positive factors against the negative factors. However, I would note that the mere fact of gang affiliation or criminal convictions would not preclude advising a voluntary departure, and I would point this court to the cases I cite, which is 29 to 25 of my reply briefs. Specifically, in the case of Maramona Murad with the CIA 2005 case, the respondent had a condition of a robbery, a condition involving controlled substances, provided a false name to the law enforcement authorities, and so forth. And the VA has still found that this should be considered for voluntary departure to remand the CIJ for life. On my side, this court's case in Alcatraz, so the defendant had a pre-juvenile case, I believe, and was also convicted out of juvenile, had an adult as a juvenile for several crimes, but was also a pregnant woman. And in my case, this court actually found that the defendant was pregnant. So I think because the court found in Alcatraz, just as the voluntary separation is plausible, the same outcome would apply in this case. So the remedy you're suggesting is to remand it to the district court for the district court to make a determination on the prejudice issue. If the district court determines that there was no prejudice, then it could then reinstate the sentence. Correct. Thank you, and I'd like to reserve my remaining time. You may. You have about a minute. Good morning, Your Honor. Good morning. I'm here in support of juvenile Alcatraz on behalf of the United States. I'd actually like to start with what I think is the government's better position in this case, which is the prejudice issue. While we don't concede necessarily that due process was violated here by failure of the IJ to explicitly mention the defendant's statutory eligibility for voluntary departure, since he was neither an aggravated felon nor a terrorist-related offense, I do think that, A, there are enough facts or the record has been developed sufficiently to prove in this case that there was no prejudice to the defendant incurred as a result of the immigration judge's failure to explicitly say, Mr. Licino, you are eligible for voluntary departure. I think there are several reasons. In a published case last week, and I wrote a petition with a 28-day letter to the public for the record, it's the United States v. Verasco, Colorado, in which Judge Ikuda authored the opinion in the context of expedited removal proceedings. And while that's obviously different from voluntary departure, the panel does address what a plausible showing means, and there's no Westlaw, I'm sorry, there's no federal recorder's right to that case yet, but the license plate is 2011 U.S. Act, license 17652. At page 30, the court notes that we note, however, that establishing plausibility requires more than establishing a mere possibility. But shouldn't Mr. Licino here, going back to the immigration proceeding, he would have presumably, or potentially if he'd been advised that he was eligible, might have determined not to waive appeal, to try to develop the record. Shouldn't he have an opportunity to, shouldn't he have had an opportunity to do that, and by virtue of not having had that opportunity, how can we go back and figure that out? I'm interested, Your Honor. There's several responses I have to that question. First, I think that the record, again, while noting that the IJ didn't specifically mention the eligibility for voluntary departure, I think the records would have been developed before the IJ, for the IJ to have made that determination that he wouldn't have received it. First, we have the statement, obviously, that voluntary departure will be denied. It's axiomatic. You can't consider someone for something, or you can't deny someone relief for something without having first considered them for it. Did the district court rule on that point? On the prejudice problem, Your Honor? No, no. On the fact that it was determined. Yes. Well, I believe Judge Renz did note in the record that the IJ said specifically voluntary departure will be denied. That came through at the hearing beforehand. So that was definitely addressed in the record alone. Is it your position that that's what the district court ruled on, or did the district court say he didn't have to be told? No, I think it's a little peculiar. The district court held the defendant was considered for voluntary departure, and that in the exercise of discretion, the IJ denied that for him. And so I think, in addition, the district court had more than enough on, as far as the record goes, to make the determination that no prejudice had been shown. And as Your Honor noted, there are a lot of countervailing factors against meeting this burden of a plausible ground for relief in this case. The defendant was an admitted gang member. Obviously, it was raised later that he had a fiancée who was pregnant with his child. But at the time of the IJ hearing, the judge asked him, do you have any family ties? And he said no. And we can't expect the immigration judge to be able to read the defendant's mind in this case. He was asked specifically about family ties, and he said no. But just as a fundamental due process point, this individual was not advised that he had a right to seek voluntary departure. He, understandably, has no clue at this point that he has that right. And then he makes certain decisions, one of which is he decides to waive his appeal, as I understand it. Isn't that fundamentally unfair, such that real due process concerns are implicated by that? I think they are to some degree. But I also think that the IJ didn't use the Magic Word's voluntary departure in this case. But he asked a series of questions leading up to that, such as, you know, he informed everyone at the hearing, if you want to present evidence, if you want to marshal equities, to quote Judge Bull earlier this morning, you have a chance to do that. If you want to seek – For what? That's the problem. That's the problem. He didn't say the Magic Word's voluntary departure. And more than that, I think if I recall correctly, he says, when I get to you, and I believe there were 25 different individuals at that point before him, he says, I will advise you as to whether or not there are remedies available. He almost – he suggests, don't worry, I'm going to bring that up again with you. And then when Mr. Lucino gets there, he doesn't. That's true, Your Honor. And that's why I – well, again, we don't concede that it was fundamentally unfair. I think the better and stronger point for the government in this case is that the defendant cannot show prejudice. And there's no – Well, but, see, the district court didn't really – didn't determine that. That's true, but I – And the district court seemed to say, the best I can make of it is the district court seemed to say that there was a determination that he was not entitled to the relief to which he was never told that he might be entitled. I agree, Your Honor. But I believe that there's enough in this record for this court to say that. Court to make the independent determination. Exactly. Without unnecessarily remanding it to the district court for consideration of that fact. We have all of the facts in the excerpts of record here. You know, we know that he now or was engaged at the time – sorry, or is engaged in the United States Citizen and the father of the United States Citizen baby. But we have all of the countervailing factors that he's a gang member, that he has two serious juvenile adjudications for which he received five years in California Youth Authority. And, again, while acknowledging that's a juvenile adjudication, both of those would be categorical crimes of violence under 201.2. If he had been convicted as an adult, those would result in 16-level enhancements to his sentence. We know that he doesn't have any family members aside from his fiancee and now the U.S. Citizen child. The I.J. also notes that he had a prior voluntary removal. This is someone who was given a chance to reapply for admission legally and didn't do so. And, in fact, came back, I believe, less than a year later. He was given voluntary removal in 2004, came back in 2005, did five years in California Youth Authority custody after his parole was revoked. So even in light of all of the other factors, such as the fact that he earned his GED and that he might have had some part-time work, this is a very young individual with very serious juvenile adjudications. And I don't believe that he would be able to meet that burden of demonstrating. Well, you may well be right, but isn't the proper place to make that determination in the trial court rather than here? I think that there is enough information on this record for this panel to make that determination. I don't think that there's anything new, and my post of counsel hasn't cited anything, that would necessarily further inform the district court on that determination. I think it would make more sense for this panel to be able to decide that issue. Unless the court has any other questions, I would submit. There don't appear to be any further questions. Thank you. I'd like to make two brief points, Your Honors. First, I would point the court to pages 42 and 43 of the EDR, where the district court is no longer involved in this discussion. And there, the district court essentially says that voluntary departure, the immigration judge considered this as, you know, a voluntary departure, and therefore the motion is denied. So I think the district court is essentially saying that he may be qualified. The district court never reaches the accredited issue, and that's why I suggested that a remand is appropriate. And I would point the court to several authorities in support of a remand. The United States Courts of Appeals, Lopez, Vasquez, and Beyond Paws, those are all three candidates in support of a remand in the district court. The first is the president. And I would note that the government hasn't committed to any kind of bailing authority since 2014, which is on this issue in the first instance. Secondly, I would note that the district court does have certain kinds of bailings However, as I mentioned, there are several cases in this case that indicate that gang affiliation in adult conditions for robbery do not bar an eligibility, an important eligibility, in consideration for voluntary departure. Thank you. The case just argued is submitted for decision. The court appreciates the argument of counsel for both sides of the matter. That concludes the court's calendar for this morning, and the court stands adjourned. All rise. Court is adjourned.
judges: Seeborg, Schroeder, Gould